**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **DAFFANIE TODD on behalf of herself;** | ) | |
| **R.D., R.D., and D.T., by and through** | ) | |
| **their next friend, DAFFANIE TODD** | ) | **ECF CIVIL ACTION** |
| | ) | **FILE NO:** |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **MERIA CARSTARPHEN,** | ) | |
| **in her official capacity as** | ) | |
| **SUPERINTENDENT,** | ) | |
| **ATLANTA INDEPENDENT SCHOOL** | ) | |
| **SYSTEM and ATLANTA** | ) | |
| **INDEPENDENT SCHOOL SYSTEM** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiffs Daffanie Todd, and her three minor children, by their attorneys,

Atlanta Legal Aid Society, Inc., file this complaint against Defendant Atlanta

Independent School System ("Atlanta Public Schools" or "APS") showing as

follows:

1

## NATURE OF THE ACTION

1.     This is an action by Daffanie Todd and her three minor children—
R.D., R.D., and D.T. by and through their next friend, Ms. Todd—against Atlanta
Public Schools for failure to reasonably accommodate Plaintiffs and excluding
them from participation in school activities, in violation of Title II of the
Americans with Disabilities Act 42 U.S.C. §§ 12131-12134, and Section 504 of the
Rehabilitation Act of 1973, 29 U.S.C § 794.

## JURISDICTION AND VENUE

2.     42 U.S.C. §§ 1331 and 1343 give this court jurisdiction.  This action
arises under the authority vested in this Court by virtue of 29 U.S.C. § 794a(b)  and
42 U.S.C. § 12132.  Venue is proper in the Northern District of Georgia because a
substantial part of the events or omissions giving rise to Plaintiffs' claims arose in
this judicial district and the Defendant resides in this district. 28 U.S.C. § 1391(a)
and (b).

## PARTIES

3.     Plaintiff Daffanie Todd ("Ms. Todd") is completely blind in both
eyes, and is currently unable to walk without an accompanying individual holding
her arm as a guide.

4. She is a single mother, living alone with her four minor children, R.D., R.D., D.T., and D.D. She lives at 2773 The Fontainebleau SW, Atlanta, Georgia, 30331.

5. Three of her minor children are also Plaintiffs in the action: R.D., R.D., and D.T. ("the minor plaintiffs").

6. The minor Plaintiffs are students at Continental Colony Elementary School, and have been enrolled there at all times relevant to this action.

7. R.D. is nine years old and in the fourth grade; R.D. is eight years old and in the third grade; and D.T. is five years old and in the Pre-Kindergarten program.

8. The children have a history of excellent school attendance and high grades. They are also obedient, respectful, and help their mother with her disability.

9. Ms. Todd has full custody of the children. The children's father lives across town and is not involved in their lives on a routine basis.

10. Atlanta Public Schools ("APS") is a public school district based in Atlanta, Georgia. APS' principal office is located at 130 Trinity Avenue SW, Atlanta, GA 30303. Continental Colony Elementary School is a school within Atlanta Public Schools.

11.    APS is subject to the non-discrimination and accommodation mandates of the Americans with Disabilities Act and the Rehabilitation Act of 1973 because it is a "public entity" as defined by 42 U.S.C. § 12131, and it is a "program or activity receiving federal financial assistance" as defined by 29 U.S.C. § 794(a)-(b).

## FACTUAL ALLEGATIONS

12.    In April 2002, Plaintiff Daffanie Todd was diagnosed with retinal detachment—an eye condition whereby the retinal tissue at the back of the eye tears and separates from the rest of the eye such that the retinal tissues are unable to receive oxygen. Ms. Todd's retinal detachment had caused inflammation and glaucoma in both of her eyes, and her doctors determined that she was legally blind.

13.    As time passed, Ms. Todd's eye condition worsened, and on June 3, 2013, she became completely blind in both eyes.

14.    Ms. Todd has not yet developed certain life-skills that allow some blind people increased mobility and an ability to effectively navigate their community without assistance.  She does not walk with a cane or have the aid of a guide dog.

15.     Ms. Todd is currently unable to walk outside her home without a trusted companion accompanying her and holding her arm as a guide.

16.     The only place where Ms. Todd is able to walk independently is in her own home, which she is able to navigate by shuffling her feet, feeling with her arms, and relying on her memory of the house's layout.

17.     As a result of Ms. Todd's blindness, she suffers from anxiety and has become very untrusting towards strangers, particularly those that interact with her children outside of her supervision. These anxieties and fears are part of Plaintiff Ms. Todd's disability.

### *Atlanta Public Schools' Transportation Policies*

18.     APS undertakes to help parents get their children to school by providing bus transportation services.

19.     APS divides each of its school areas into "bus-zones" and "walk-zones."

20.     Parents and students who live in the "bus-zone" have the benefit of bus services in their neighborhood, on their street, or in front of their house.

21.     Parents and students who live in the "walk-zone," however, do not receive the benefit of any bus services—they are required to walk to school, or otherwise arrive on their own accord.

22.    The sizes of Defendant APS' "walk-zones" and "bus-zones" vary among each school, but the APS website states that "students living within a 1 or 1½ mile route of the school are assigned to the walk-zone." *See* Atlanta Public Schools Department of Transportation, *Bus Stop Safety Procedures*, *available at* http://www.atlanta.k12.ga.us/domain/5848 (accessed October 3, 2016).

23.    There are no exceptions to this policy: on or about August 19, 2016, John Franklin, Executive Director of APS Department of Transportation, told Ms. Todd that people who live in the "walk-zone" "are ineligible" to receive APS transportation services, and that "ineligible means ineligible."

24.    On at least three separate occasions between August 19, 2016 and September 14, 2016, various APS officials told Plaintiffs and/or their counsel that it is APS policy to not accommodate non-disabled students that are the children of disabled parents.

25.    Defendant's transportation policy also includes requirements regarding adult supervision during the process of transporting students to school. Defendant's website says these adult supervision requirements "are mandated by Georgia's Department of Family and Children Services (DFACS )."

26.    Defendant's adult supervision requirements state that children aged 8 and under should never be left unsupervised, even for short periods of time.

27.    Defendant's adult supervision requirements state that children with ages between 9 and 12 *may* be left alone, based on levels of maturity, for brief periods of time.

### Defendant has provided similar accommodations to Ms. Todd in the past

28.    Ever since Ms. Todd became completely blind in June 2013, her children, the minor Plaintiffs, have only been able to attend school because APS provided standard bus services, and APS officials made special accommodations for Plaintiffs as a result of Ms. Todd's disability.

29.    On two separate occasions in the past, school officials at other APS elementary schools have agreed to alter its bus services to accommodate Ms. Todd's disability in order to ensure that her children were able to attend school.

### Continental Colony Elementary refuses to reasonably accommodate Ms. Todd's disability

30.    On or about May 2016, Plaintiffs moved to their current residence, 2773 The Fontainebleau SW, Atlanta, Georgia, 30331, placing them in the Continental Colony Elementary School district.

31.    Plaintiffs' house is about .5 miles from the school. Their street does not have any sidewalks, and there is heavy car traffic on their street, The Fontainbleau.

32.     In July 2016, Ms. Todd went to the school to enroll and register her children in Continental Colony Elementary School and the Pre-Kindergarten program.

33.     During her visit to the school in July 2016, Ms. Todd notified school officials that she was blind and inquired what the bus route would be. School officials replied that bus routes had not yet been determined, but made no mention of a "walk-zone."

34.     Ms. Todd was concerned because she did not know how she would get her children to school without bus services provided by the school, as APS had always done for Plaintiffs in the past.

35.     On the first day of school, August 3, 2016, the Plaintiffs were able to get to school because the children's father, Rogers Dennison, was available to walk Plaintiffs to school, and then to guide Ms. Todd home.

36.     Upon arriving at the school on August 3, 2016, Ms. Todd spoke with several APS officials, including Dr. Vaughn, the Principal of Continental Colony, to request that the school provide the plaintiffs with vehicle transportation as an accommodation for Ms. Todd's blindness and inability to walk alone.

37.     It was during her conversation with Dr. Vaughn on August 3, that Ms. Todd learned, for the first time, that her house had been designated as within

Continental Colony's .5-mile walk-zone and that therefore there would be no bus services provided to Plaintiffs. Dr. Vaughn stated that she would relay Ms. Todd's accommodation request to the APS Transportation Department.

38.   On or about August 4, 2016, Principal Dr. Vaughn informed Ms. Todd that the Transportation Department had denied Ms. Todd's accommodation request.

39.   The minor Plaintiffs were able to attend school on August 3, 4, 5, and 8th—the first four days of school—because the children's father, Mr. Rogers Dennison, requested time off of work to walk the minor Plaintiffs to and from school.

40.   On August 9, 2016, Ms. Todd implored the children's father to continue to take the children to school, but he said he could not continue to do so anymore, and the children were not able to attend school that day. They have not been able to attend school since August 8, 2016, *nearly nine weeks ago*.

41.   Sometime between August 4 and August 16, 2016, Mr. Rogers Dennison explained to school officials that he was not able to consistently help bring the children to school.

42.   During the week of August 8, 2016, Ms. Todd continued to request the school's assistance in getting her children to school; she spoke with Mr.

Rodney Harleston, the social worker at Continental Colony, as well as an Associate Superintendent, Mr. Tommy Usher.

43.    On August 16, 2016, Ms. Todd and Rogers Dennison met with APS officials, including Dr. Vaughn (Principal of Continental Colony) and Rodney Harleston to discuss the situation, but school officials again refused to provide a workable solution.

44.    On August 19 and August 22, 2016, Ms. Todd spoke with John Franklin, Executive Director of APS Department of Transportation, and on August 22, 2016, she spoke with Mr. Larry Hoskins, Deputy Superintendent for Operations. They explained that APS does not make accommodations in this type of situation.

45.    On August 23, Plaintiffs sought legal assistance from Atlanta Legal Aid Society, Inc., the undersigned counsel.

46.    Between August 23 and September 6, 2016, counsel for Ms. Todd spoke with multiple APS officials at Continental Colony, including Dr. Vaughn, Sarah Haynes (Assistant Principal), Nicole Spiller (Director of Student Services).

47.    On September 6, 2016, Plaintiffs sent a formal letter requesting reasonable accommodations to Dr. Meria Carstarphen, Superintendent of Atlanta Public Schools (attached as Exhibit 1).

48. One specific accommodation Plaintiffs' requested was a slight alteration of school bus route number 1505, or some other arrangement. *See* Plaintiff's Map Depicting Proposed Modification to Bus 1505 (Attached as Exhibit 2).

49. More generally, Plaintiffs requested that Defendants provide daily school-sponsored services to safely accompany the minor Plaintiffs, on foot or by vehicle, to the school from their house, as stated in their letter of September 6 (attached as Exhibit 1) and clarified in an e-mail on September 28 (attached as Exhibit 5).

50. On September 14, 2016, counsel for APS denied the reasonable accommodation request via a telephone call, and stated that a formal, written response would be forthcoming.

51. To date, Plaintiffs have received no written response from APS regarding their reasonable accommodation request.

52. In the September 14 phone conversation, Defendants proposed an alternative modification—a so-called "walking pool"—whereby another parent in the neighborhood and her student could walk with the minor Plaintiffs to school.

53. To date, Defendants have made no discernable effort to establish said "walking pool," and the details of this solution remain unknown to Plaintiffs.

54.    As described by Defendants, the "walking pool" was a plan whereby a grandmother of a student at Continental Colony would walk the minor Plaintiffs to and from school. Under this plan, there would be an adult chaperone, but not an official, school-sponsored chaperone.

55.    Ms. Todd was not comfortable entrusting her three small children to a stranger who has not undergone a background check, as is required of APS bus drivers and other school officials.

56.    As a result of Ms. Todd's particular disability, Defendant's proposed-alternative modification was not a reasonable accommodation for Plaintiffs.

57.    On September 19, 2016, Plaintiffs responded via e-mail (attached as Exhibit 3) stating that the proposed "walking pool" was not a reasonable accommodation for Ms. Todd, but that they were willing to pursue it as an emergency mechanism to allow the minor Plaintiffs back in school immediately. Plaintiffs' e-mail of September 19 requested that the school begin setting up the "walking pool," the school's proposed alternative, by convening a meeting between the chaperone of the "walking pool" and Ms. Todd, in order to establish trust between them and to coordinate logistics of the "walking pool."

58.    Plaintiffs received no response from the school regarding their request to set up a meeting to establish the "walking pool."

59.    On September 22, 2016, Plaintiffs sent a follow up letter (Attached as Exhibit 4), again requesting a meeting to begin implementing Defendants' alternative modification, and inquiring into the specifics of the "walking pool."

60.    Defendants did not provide answers to Plaintiffs questions about the "walking pool," and it wasn't until September 27, 2016, that Plaintiffs became aware of *any* action taken by Defendants to implement the "walking pool."

61.    On September 27, 2016, Mr. Rodney Harleston, a social worker at Continental Colony Elementary School, called Ms. Todd proposing an "interim solution" to get the minor Plaintiffs to school. Plaintiff Daffanie Todd did not understand the word "interim" and told him to contact her lawyer.

62.    On September 28, 2016, Mr. Rodney Harleston told Plaintiffs by telephone that, in fact, the "walking pool" did not include an adult chaperone—it was merely one or two young children who could accompany the minor Plaintiffs to school.

63.    Upon learning that the "walking pool" contained no adult chaperones at all, counsel for Plaintiffs e-mailed counsel for APS stating that this new incarnation of the "walking pool" was also not a reasonable alternative. (Attached as Exhibit 5.)

64. On September 28, 2016, Defendant notified Plaintiffs by telephone that APS would not be providing any accommodation, and confirmed that there was confusion among school officials as to whether the walking pool proposal including any adult chaperones.

65. To date, Defendants have taken no discernible actions to accommodate Plaintiffs, and the children have missed **_nearly nine weeks of school_**.

## COUNT ONE: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT WITH RESPECT TO EACH PLAINTIFF

66. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

67. Ms. Todd is disabled, as that term is defined in the Americans with Disabilities Act, 42 U.S.C. § 12102, because her complete blindness is a physical impairment that substantially limits one or more major life activities.

68. The minor Plaintiffs, based on their familial association with a disabled individual, each have claims for relief separate and apart from those of Ms. Todd under 42 U.S.C. § 12112(b)(4) and 28 C.F.R. § 35.130. They bring these claims by and through their mother.

69. Defendant is aware that the minor Plaintiffs are the children of Ms. Todd.

70.     As a parent with children enrolled in one of Defendants schools, Ms. Todd is qualified to receive the benefits of Defendants' services, programs, and activities.

71.     As students enrolled in one of Defendants' schools, the minor Plaintiffs are qualified to receive the benefits of Defendants' services, programs, and activities.

72.     Defendant Atlanta Public Schools is a public entity under the Americans with Disabilities Act, as that term is defined in 42 U.S.C. § 12131.

73.     As a result of their association with Ms. Todd, a disabled individual, and Defendants' failure to reasonably accommodate Plaintiffs pursuant to its transportation policy, the minor Plaintiffs have been unable to attend school *for nearly nine weeks*.

74.     Defendant's failure to reasonably accommodate her and her family has excluded the minor Plaintiffs from school and denied them the benefits of the services offered by Defendant, in violation of 42 U.S.C. § 12132 and its implementing regulations.

75.     Defendants' exclusion of the minor Plaintiffs from school, and its denial to Plaintiffs of APS' services, have occurred by reason of Ms. Todd's disability, and therefore Defendants' actions constitute unlawful discrimination

against Plaintiffs, in violation of 42 U.S.C. § 12132 and its implementing regulations.

76.   Defendant's failure to reasonably accommodate Ms. Todd's disability constitutes prohibited discrimination by association against the minor Plaintiffs, in violation of 42 U.S.C. §§ 12132 and 12112(b)(4) and their accompanying regulations.

77.   Defendant has denied the benefits of its services to the minor Plaintiffs because of their familial association with a disabled individual, their mother, Ms. Todd, in violation of 42 U.S.C. §§ 12132 and 12112(b)(4) and their accompanying regulations.

78.   Defendant has displayed discriminatory intent and deliberate indifference to Plaintiffs' request for reasonable accommodation and the requirements of the Americans with Disabilities Act.

79.   As a result of Defendant's actions, Plaintiffs have suffered consequential damages including, but not limited to, personal injury, pain and suffering, and emotional harm and distress.

80.   As a result of Defendant's actions resulting in the minor Plaintiffs continued absence from school, Plaintiffs have and continues to suffer irreparable harm.

## COUNT TWO:  DEFENDANT'S VIOLATION OF
## THE REHABILITATION ACT OF 1973

81.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint.

82.     Ms. Todd is disabled, as that term is defined in 29 U.S.C. § 705(20).

83.     The minor Plaintiffs, based on their familial association with a disabled individual, each have claims for relief separate and apart from those of Ms. Todd under in violation of 29 U.S.C. §§ 794, 794a(a)(2), and 28 C.F.R. § 35.130. They bring these claims by and through their mother.

84.     Defendant is aware that the minor Plaintiffs are the children of Ms. Todd.

85.     As a parent with children enrolled in one of Defendants schools, Ms. Todd is qualified to receive the benefits of Defendants' services, programs, and activities.

86.     As students enrolled in one of Defendants' schools, the minor Plaintiffs are qualified to receive the benefits of Defendants' services, programs, and activities.

87.     Defendant Atlanta Public Schools is subject to the provisions of the Rehabilitation Act of 1973 because it is a "program or activity" receiving federal financial assistance, as defined by 29 U.S.C. § 794(b).

17

88.    As a result of their association with Ms. Todd, a disabled individual, and Defendants' failure to reasonably accommodate Plaintiffs pursuant to its transportation policy, the minor Plaintiffs have been unable to attend school ***for nearly nine weeks.***

89.    Defendant's failure to reasonably accommodate Plaintiffs has excluded Plaintiffs from school and denied them the benefits of the services offered by Defendant, in violation of 29 U.S.C. § 794 and its implementing regulations.

90.    Defendants' exclusion of Plaintiffs from school, and its denial to Plaintiffs of APS' services, have occurred by reason of Ms. Todd's disability, and therefore Defendants' actions constitute unlawful discrimination against Plaintiffs, in violation of 29 U.S.C. § 794 and its implementing regulations.

91.    Defendant's failure to reasonably accommodate Ms. Todd's disability constitutes prohibited discrimination by association against the minor Plaintiffs, in violation of 29 U.S.C. §§ 794, 794a(a)(2), and 28 C.F.R. § 35.130.

92.    Defendant has denied the benefits of its services to the minor Plaintiffs because of their familial association with a disabled individual, their mother, Ms. Todd, in violation of 29 U.S.C. §§ 794, 794a(a)(2), and 28 C.F.R. § 35.130.

93.    Defendant has displayed discriminatory intent and deliberate indifference to Plaintiffs' request for reasonable accommodation and the requirements of the Americans with Disabilities Act.

94.    As a result of Defendant's actions, Plaintiffs have suffered consequential damages including, but not limited to, personal injury, pain and suffering, and emotional harm and distress.

95.    As a result of Defendant's actions resulting in the minor Plaintiffs continued absence from school, Plaintiffs have and continues to suffer irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests judgment granting the following relief:

1) A declaration that Defendant's actions complained of herein constitute violations of the Americans with Disabilities Act and the Rehabilitation Act of 1973;

2) An order granting Plaintiffs' request for declaratory and injunctive relief to permanently require Defendant to provide daily school-sponsored services to safely accompany the minor Plaintiffs, on foot or by vehicle, to the school from their house;

3) An order awarding compensatory and consequential damages;

4) An order awarding attorneys' fees and costs;

5) Such additional relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demands a trial by jury on all issues of fact and damages

stated herein.

Respectfully submitted this 6th day of October 2016.


/s/Kimberly D. Charles
Georgia Bar No. 141770
**ATLANTA LEGAL AID SOCIETY, INC.**
777 Cleveland Avenue SW, Suite 410
Atlanta, GA 30315
(678) 702-8404
kdcharles@atlantalegalaid.org

/s/William C. Thompson
Georgia Bar No. 710150
**ATLANTA LEGAL AID SOCIETY, INC.**
777 Cleveland Avenue SW, Suite 410
Atlanta, GA 30315
(678) 702-8406
wcthompson@atlantalegalaid.org

/s/Craig L. Goodmark
Georgia Bar No. 301428
**ATLANTA LEGAL AID SOCIETY, INC.**
54 Ellis Street, NW
Atlanta, GA 30303
(404) 719-4848
cgoodmark@gmail.com

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14) font, as approved by the Court in L.R. 5.1.B.


/s/Kimberly D. Charles
Georgia Bar No. 141770
**ATLANTA LEGAL AID SOCIETY, INC.**
(678) 702-8404
kdcharles@atlantalegalaid.org