UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DAFFANIE TODD on behalf of | ) | |
| herself; R.D., R.D., and D.T., | ) | |
| by and through their next friend, | ) | |
| DAFFANIE TODD, | ) | CIVIL ACTION |
| Plaintiffs, | ) | FILE NO:  1:16-CV-3729-WSD |
| | ) | |
| vs. | ) | |
| | ) | |
| MERIA CARSTARPHEN, | ) | |
| in her official capacity as | ) | |
| SUPERINTENDENT, | ) | |
| ATLANTA INDEPENDENT | ) | |
| SCHOOL SYSTEM and ATLANTA | ) | |
| INDEPENDENT SCHOOL | ) | |
| SYSTEM, | ) | |
| Defendants. | ) | |

## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

COME NOW, Ms. Daffanie Todd, on behalf of herself, and R.D., R.D., and D.T., by and through their next friend, DAFFANIE TODD, Plaintiffs in the above-styled case, and submit the following Proposed Findings of Fact and Conclusions of Law as per the Court's request.

## FINDINGS OF FACT

### A.  Background

1.     Plaintiff Daffanie Todd ("Ms. Todd") is completely blind in both eyes, and is currently unable to walk without an accompanying individual holding her arm as a guide.  ~~Compl. ¶ 3; 10/13/2016 testimony of Daffanie Todd (hereinafter 10/13/2016 testimony).~~Hearing Testimony, p. 14; hereinafter, "Hearing Testimony, p.____".

2.     Ms. Todd is a single mother, living alone with her four minor children, R.D., R.D., D.T., and D.D.  She lives in Fulton County inside the walk zone for Continental Colony Elementary School.  Hearing Testimony, p. 11.

3.     Three of her minor children are also Plaintiffs in the action: R.D., R.D., and D.T. ("the minor plaintiffs").  Id.

4.     The minor Plaintiffs are students at Continental Colony Elementary School.  They have been enrolled there at all times relevant to this action.  ~~Id.~~Hearing Testimony, p. 11-12, 25.

5.     R.D. is nine years old and is in the fourth grade.  R.D. is eight years old and in the third grade. D.T. is five years old and in the Pre-Kindergarten program.  Id.

6.     The children have a history of excellent school attendance and high

grades.   ~~They are also obedient, respectful, and help their mother with her disability.   Id.~~Compl. ¶ 8 (admitted in Defendant's answer).

~~7.      Ms. Todd has full custody of the children at all times relevant to this action.   Id.~~

~~8~~7.      The children's father lives across town and is not consistently involved in their lives.   ~~Id.~~Hearing Testimony, p. 34-37.

8.      Ms. Todd has a fourteen year old son, D.T., that is not available to assist Ms. Todd to get the younger children to and from school.   Hearing Testimony, p. 38-39.

9.      Atlanta Independent School System ("AISS") or Atlanta Public Schools ("APS") is a public school system in Atlanta, Georgia.   APS' central office is located at 130 Trinity Avenue SW, Atlanta, GA 30303.   Continental Colony Elementary Schools is a school within APS.   Compl. ~~¶ 10.~~¶ 10 (admitted by Defendant's answer).

10.     APS is subject to the non-discrimination and accommodation mandates of the Americans with Disabilities Act and the Rehabilitation Act of 1973 because it is a "public entity" as defined by 42 U.S.C. § 12131, and it is a "program or activity receiving federal financial assistance" as defined by 29 U.S.C. § 794(a)-(b).

3

**B.     Ms. Todd's is "disabled" under 42 U.S.C. §12102 and 28 C.F.R. §35.130.**

11.     In April 2002, Ms. Todd was diagnosed with retinal detachment—an eye condition in which the retinal tissue at the back of the eye tears and separates from the rest of the eye such that the retinal tissues are unable to receive oxygen.  Ms. Todd's retinal detachment had caused inflammation and glaucoma in both of her eyes, and her doctors determined that she was legally and totally blind.  ~~Compl. ¶ 12, 10/13/2016~~Hearing Testimony, p. 13.

12.     Ms. Todd has not been blind for very long and as a result she has not yet developed certain life-skills that allow blind people increased mobility and an ability to effectively navigate their community without assistance.  She does not yet walk with a cane or have the aid of a guide dog.  ~~Id.~~Hearing Testimony, p. 19.

~~13.~~13.At the beginning of 2015, and again in 2016, Ms. Todd began the process of applying for services at the Center for Vision Impaired.  In 2016, she re-started the process but could not continue because her children were not in school.  Id. at 20.  To this day, the lack of consistent supports for Ms. Todd to get her children to school have impeded her ability to pursue CVI trainings.  Id.

14. Ms. Todd is currently unable to walk outside her home without a trusted companion accompanying holding her arm as a guide. ~~Id.~~ Hearing Testimony, p. 24.

~~14~~15. The only place where Ms. Todd is able to walk independently is in her own home where she navigates by shuffling her feet, feeling with her arms, and relying on her memory of the house's layout. ~~Id.~~ Hearing Testimony, p. 23-24.

~~15~~16. As a result of Ms. Todd's blindness, she suffers from anxiety and has become very untrusting towards strangers, particularly those that interact with her children outside of her supervision. These anxieties and fears are part of Ms. Todd's disability. ~~Id.; Expected testimony of Ms. Todd on 1/5/2017.~~ Hearing Testimony, p. 17.

~~16. Ms. Todd is disabled, as that term is defined under the Americans with Disabilities Act, 42 U.S.C. § 12102, because her complete blindness is a physical impairment that substantially limits one or more major life activities. Id.; 30(b)(6) Deposition of AISS, p. 83 (hereinafter "Agency Depo" and attached hereto as Attachment A).~~

17. Ms. Todd's blindness impacts her ability to rely upon people she does not already know. Id.

18.    Ms. Todd cannot see people to evaluate their trustworthiness, or determine whether a stranger can be a person to depend upon when it comes to the safety of her children.  Hearing Testimony, p. 16.

19.    Ms. Todd's attributes her reluctance towards entrusting her children with strangers to her blindness. Hearing Testimony, p. 17.  In order for Ms. Todd to allow her children to be transported by someone, she must evaluate their character by meeting them, moving into close proximity of their personal space, and interacting with them.  Hearing Testimony, p. 16, 71.

**C.    APS Policies on Transportation and Accommodation**

~~17~~20. APS undertakes to help parents get their children to school by providing ~~bus~~ transportation services. Ans. ¶ 18; Hearing Testimony, p 136.

~~18~~21. APS also relies on students' parents to get their children to school.  Hearing Testimony, p. 140-142.    APS policy states that for children who require bus transport, children under five years old must be accompanied by an adult to and from the bus stop.  Hearing Testimony, p. 140; Doc. 31-1, p. 22 (P-Ex. 13, p. 3).

22.    APS' Transportation Procedures for bus stops incorporate by reference DFCS policy about ages when children may be left alone.  Id.  The procedures require that students under the age of five have an adult accompany them to and

from the school transport.  This same standard applies to children walking to and from school.  Hearing Testimony, p. 140.

23.    APS divides each of its school areas into "bus-zones" and "walk-zones." *AISS Answer* [Doc. 14], ¶ 19, Agency Depo, pg. 55.  APS will create bus stops in walk-zones for routes APS administration deems "dangerous."  Agency Depo, pg. 13-16.  There is no APS policy that determines the criteria for walk-zone safety. Id., pg. 41.   Each request for a bus stop in a walk zone is evaluated on a case-by-case basis.  Hearing Testimony, p. 143.   When APS documents a safety concern inside the walk zone, a bus stop is created.  Id. at 144.

24.   For student living inside the walk zone, APS relies on parents of small children to get their children safely to school.  Hearing Testimony, p. 142 .  A five year old child walking to school in the dark must be accompanied by an adult.  Id.

25.  Inside the "walk-zones," APS has created hundreds of bus stops where walk-zones have been deemed "dangerous."   Agency Depo, p. 16-17; Hearing Testimony, p. 149.

~~19~~26. It is APS policy and practice not to accommodate non-disabled students that are the children of disabled parents and AISS does not have any procedures in place to evaluate such requests.  APS officials stated this policy to Plaintiffs and/or their counsel on at least three separate occasions between August 19, 2016, and

September 14, 2016. Ans. ¶. 24, Agency Depo, pg. 63; *AISS Response to Plaintiffs'*

*First Interrogatories to Defendants*, p. 12-3.

~~20~~27. APS makes no determination regarding the ability of disabled persons to navigate "walk-zones."  Agency Depo, pgs. 37, 41, 45.   APS Transportation director John Franklin did not know about the severity of Ms. Todd's condition when he evaluated the safety of the walking route from her home to Continental Colony.  Hearing Testimony, p. 145.

~~21~~28. APS policy as administered by Franklin was not to consider the disability of the person walking the route when evaluating whether or not the route was safe. Hearing Testimony, p. 145-147.  Mr. Franklin did not allow the blindness of Ms. Todd to affect his decision under APS administrative regulations regarding creating bus stops in the walk zones.  Id.

29.    APS will not consider requests for accommodations from disabled parents of non-disabled students.  Agency Depo, pgs. 37, 63; Hearing Testimony, p. 145. APS Policy ED-R(1) states that, "Students who are not eligible for transportation including students residing within walk zones and students attending schools on general administrative transfers will not receive APS transportation to school via any method." Agency Depo, pg. 55.

~~22~~30. APS administers this policy without accommodations for disabled parents who have no other means of getting their children to school.  Agency Depo, pgs. 36, 39, 56, 63.  Hearing Testimony, p. 145.

~~23~~31. Sometime between 2012-2014, APS eliminated all bus stops within ALL walk-zones. But then, due to 3-4 days of public outcry, all walk-zone bus stops were re-instated.  Agency Depo, p. 75-76.

32.   APS has admitted that its walk zone policies are not state mandated. "Georgia law with respect to walk zones is not so defined, and in fact only relates to transportation funding being denied students residing within the radius of a walk zone." Defendants/Respondents Response in Opposition to Motion for a Temporary Restraining Order and Preliminary Injunction, p. 12.  APS has not cited any state statute that mandates its walk zone or bus transportation policies.

**D.   Ms. Todd's Reasonable Accommodation Request on Behalf of Herself and Her Children and APS Refusal to Accommodate Ms. Todd's Disability**

~~24~~33. On the first day of school, August 3, 2016, Plaintiffs father, Roger Dennison, walked Plaintiffs, including Ms. Todd, to school, and then guided Ms. Todd back home after leaving the children at school.  ~~Compl. ¶ 35; 10/13/2016 testimony.~~ Hearing Testimony, p. 25.

~~25~~34. Upon arriving at the school on August 3, 2016, Ms. Todd spoke with several APS officials, including Dr. Vaughn, the Principal of Continental Colony, to request that the school provide the Plaintiffs with vehicle transportation as an accommodation for Ms. Todd's blindness and inability to walk alone. ~~Compl. ¶ 36; 10/13/2016 testimony.~~Hearing Testimony, p. 25-26.

~~26~~35. It was during her conversation with Dr. Vaughn on August 3, 2016, that Ms. Todd learned, for the first time, that her house had been designated as within Continental Colony's ~~.5 mile~~ walk-zone and that therefore there would be no bus services provided to Plaintiffs. ~~Compl. ¶ 37, 10/13/2016 testimony~~Hearing Testimony, p. 26.

~~27~~36. Dr. Vaughn stated that she would relay Ms. Todd's accommodation request to the APS transportation Department. ~~Compl. ¶ 37; 10/13/2016 testimony~~Hearing Testimony, p. 27.

~~28~~37. On or about August 4, 2016, Principal Dr. Vaughn informed Ms. Todd that the Transportation Department had denied Ms. Todd's accommodation request. ~~Compl. ¶ 38; 10/13/2016 testimony~~Id.

~~29.   Because the children's father, Mr. Roger Dennison, requested time off of work to walk the minor Plaintiffs to and from school, the minor Plaintiffs were~~

able to attend the first four days of school on August 3, 4, 5, and 8th.  Compl. ¶ 39; 10/13/2016 testimony.

30.   On August 9, 2016, Ms. Todd implored the children's father to continue to take the children to school, but he said he could not continue to do so anymore, and the children were not able to attend school that day.   Compl. ¶ 40; 10/13/2016 testimony.

3138. Sometime between August 4 and August 16, 2016, Mr. Dennison explained to school officials that he was not able to consistently help bring the children to school.   Compl. ¶ 41, Deposition of Rodney Harleston, pg. 48; (hereinafter "Harleston Depo").

3239. During the week of August 8, 2016, Ms. Todd continued to request the school's assistance in getting her children to school; she spoke with Mr. Rodney Harleston, the social worker at Continental Colony, as well as an Associate Superintendent, Mr. Tommy Usher. Compl. ¶ 42, Harleston Depo,  pg. 47; Hearing Testimony, p. 27.

3340. On August 16, 2016, Ms. Todd and Mr. Dennison met with APS officials to discuss the situation, but school officials again refused to provide a workable solution. Compl. ¶ 43; Harleston Depo, p. 51.

34~~41~~. The APS officials at this meeting on August 16, 2016 were Dr. Vaughn (Principal of Continental Colony) Dr. Jacquelyn Anthony (APS Coordinator of Social Work Services), and Mr. Harleston (School Social Worker for Continental Colony). ~~Compl. ¶ 43;~~ Harleston Depo, p. 53.

35~~42~~. At the August 16, 2016 meeting, Ms. Todd again asked for some school-sponsored means of getting the children to school as a reasonable accommodation for her blindness. Harleston Depo, p. 55.

36~~43~~. Harleston had never encountered, or heard of another social worker being presented with, a situation like this in thirty years of being a social worker. Harleston Depo, p. 42.

37~~44~~. Harleston states that "it is a fairly unique situation" when there is "A blind mother who can't walk, who can't accompany her children to school on that walk, who also lives in the 'walk-zone' without a bus service, whose streets have no sidewalks and the mother believes it's too dangerous for the children to walk alone." ~~Id. pg.~~ Harleston Depo, p. 44.

38~~45~~. At the August 16, 2016 meeting, Ms. Todd told school officials that she would not be able to get her children to school without some sort of school transportation option. Harleston Depo, p. 56.

39~~46~~. On August 19 and August 22, 2016, Ms. Todd spoke with John Franklin, Executive Director of APS Department of Transportation, and on August 22, 2016, she spoke with Mr. Larry Hoskins, Deputy Superintendent for Operations.  They explained that APS does not make accommodations in these types of situations. ~~Compl. ¶ 44;~~ Agency Depo, pg. 63~~.~~; Hearing Testimony, p. 28.

40~~47~~. On or about August 19, 2016, John Franklin told Ms. Todd that people who live in the "walk-zone" "are ineligible" to receive APS transportation services and that "ineligible means ineligible."  ~~Id.  Compl. ¶ 23~~Hearing Testimony, p. 27.

41~~48~~. On August ~~23~~22, 2016, Plaintiffs sought legal assistance from Atlanta Legal Aid Society, Inc., the undersigned counsel.  ~~Compl. ¶ 45.~~Hearing Testimony, p. 28.

42~~49~~. Between August 23, and September 6, 2016, counsel for Ms. Todd spoke with multiple APS officials at Continental Colony, including Dr. Vaughn, Sarah Haynes (Assistant Principal), and Nicole Spiller (Director of Student Services). ~~Compl. ¶ 46.~~Hearing Testimony, p. 27.

43~~50~~. On September 6, 2016, Plaintiffs sent a formal letter requesting reasonable accommodations to Dr. Meria Carstarphen, Superintendent of Atlanta Public Schools.  Compl. ¶ 46, Ex. 1.

44<u>51</u>. One specific accommodation Plaintiff's requested was a slight alteration of school bus route number 1505 so it could pick up the children, or some other arrangement.  Compl. ¶ 46, Ex. 1, 2.

45<u>52</u>. This accommodation would involve minimal administrative burden and cost "about $200."  Agency Depo, p. 51-52<u>; Hearing Testimony, p. 148</u>.

46<u>53</u>. More generally, Plaintiffs formally requested in a letter dated September 6, 2016 and email dated September 28, 2016 that Defendants provide daily school-sponsored services to safely accompany the minor Plaintiffs, on foot or by vehicle, to the school from their house.   Compl. ¶ 46, Ex. 1, 5.

47<u>54</u>. On September 14, 2016, counsel for APS denied the reasonable accommodation request via a telephone call, and stated that a formal written ~~request~~<u>denial</u> would be forthcoming. Compl. ¶ 50.

48<u>55</u>. The minor Plaintiffs were unable to attend school for ten weeks, from August 8, 2016, to October 17 2016.  ~~Compl. ¶ 65; and~~ Dkt. 10, *Notice of Good Samaritan*.

**E.     Defendant Has Provided A Similar Accommodation To Ms. Todd In The Past.**

~~49~~56. Ever since Ms. Todd became completely blind in June 2013, her children, the minor Plaintiffs, have only been able to attend school because APS provided standard bus services, and APS officials made special accommodations for Plaintiffs as a result of Ms. Todd's disability. ~~Compl. ¶ 28. Ms. Todd's expected January 5, 2017 testimony; (hereinafter "Ms. Todd's expected Jan. 5 testimony").~~Hearing Testimony, p. 46-47.

~~50~~57. On two separate occasions in the past, school officials agreed to alter bus services to accommodate Ms. Todd's disability and ensure that her children were able to attend school. ~~Compl. ¶ 29~~Hearing Testimony, p. 43-44.

~~51~~58. In the 2014-15 and 2015-16 school years, Plaintiffs R.D. and R.D. attended Humphries Elementary School in APS. ~~Compl. ¶ 29; Ms. Todd's expected Jan. 5 testimony.~~Id.

~~52~~59. Ms. Todd lived in the designated "walk-zone" for Humphries Elementary School. ~~Compl. ¶ 29;  Ms. Todd's expected Jan. 5 testimony~~Id.

~~53.~~ 60.         When Plaintiff Daffanie Todd notified APS of her inability to walk her  children to school and requested an accommodation, APS school officials agreed  to alter the bus services.  As a result, the children were able to attend

school.  ~~Compl. ¶ 29; Ms. Todd's expected Jan. 5 testimony.~~ Id.

**F.**    **Defendants Failed To Propose Any Alternative Reasonable Accommodation.**

~~54~~

61.    Defendants responded to Ms. Todd's request for accommodations by

offering to have the children walk in a walking pool with other children in the

neighborhood.  ~~Compl. and Ms. Todd's expected Jan. 5 testimony~~Harleston Depo,

p. 72; Hearing Testimony, p. 29-30.

~~55~~62. The walking pool did not include an adult chaperone and was not supervised

by anyone from APS. Harleston Depo, pg. 72.

63.    Ms. Todd was willing to meet and discuss a walk pool with an adult

chaperone, however no such volunteer existed.  Id.

64.    APS had offered to run background checks on any volunteers that came

forward to help Ms. Todd.  Hearing Testimony, p. 62.

65.  APS Counsel emailed counsel for Ms. Todd on January 3, 2017, at 12:54 p.m.,

after the morning drop off on the first day back after winter break, stating:

> I am writing to confirm what I previously discussed with Kimberly on
> a couple of occasions.  In an effort to resolve this matter, APS is
> willing to run background checks on two different community
> members who have offered to drive Ms. Todd's children to and from
> school.  The first is Harry Wallace (470-428-3177), who drives his
> child to and from Continental Colony every day.  The second is
> Jamilyne Lorme (404-931-5244), who apparently is a former

classmate of Ms. Todd.  Please let me know if Ms. Todd has any interest in that resolution.

66.   Mr. Wallace is not reachable at the telephone number above and therefore not available to volunteer.  Ms. Lorme never agreed to assume the duties of driving Ms. Todd's children to and from school each day for the remainder of the 2015-2016 school year.  *See* Declarations of Kimberly D. Charles and Jamilyne Lorme, filed 1/13/2017.

67.   Ms. Todd would trust a volunteer to take her kids to school if she had the opportunity to talk to them, and closely interact with them.     Hearing Testimony, p. 71.  Ms. Todd has in fact accepted the services of four volunteers since this case began.  Dkt. 10, Notice of Good Samaritan.

68.   Ms. Todd has not rejected any offers from APS to run background checks on community members that have presented themselves as volunteers to drive her children to and from school each day for the remainder of the 2016-2017 school year because no legitimate volunteers have stepped forward.   Declarations of Kimberly D. Charles and Jamilyne Lorme, filed 1/13/2017.

69.   Ms. Todd would allow an employee of APS to take her children to and from school.   Hearing Testimony, p. 85.   Ms. Todd's concerns about non-school employees relates to the lack of permanence of the solution, lack of consistency, and the overall safety of her children.  Hearing testimony, p. 17,19, 20, 71.

**G.    The Walking Route Between Plaintiff's Residence And Continental Colony Elementary Is Not Safe For Minor Plaintiffs To Walk Unsupervised.**

~~56~~70. Tameka Allen is a morning driver for Five Star Transit Express that has driven minor Plaintiffs every day since mid-October.   ~~Expected Tameka AllenHearing~~ Testimony~~, p. 93~~.

~~57~~71. There are no sidewalks for at least half of the proposed walking route from Plaintiff's residence to Continental Colony Elementary.   ~~Expected Tameka AllenHearing~~ Testimony~~.~~, p. 97.

~~58~~72. In all of her mornings driving, Tameka Allen has never seen students walking from Ms. Todd's residence or farther from her house walking to Continental Colony Elementary.   ~~Expected Tameka Allen Testimony.~~Id.

~~59~~73. Tameka Allen has seen students walking after the four-way intersection of The Fontainebleau SW and Sorrento Road.  Id.

60.   The portion of 74.  The proposed walking route is known to have heavy traffic during the hours where minor Plaintiffs will be walking to and from school. Id.

6175. Cars travelling on Hogan Road are typically driving very fast. As a result, the walking route is dangerous.  Id.Hearing Testimony, p. 98.

62.   The proposed walk route requires minor Plaintiffs to walk through no less than eight private properties each day. Id.

6376. Minor plaintiffs would be required to walk to school in the dark along this route on their way to school. Id Hearing Testimony, p. 99.

6477. As the proposed walking route goes through multiple private properties, it contains multiple obstacles such as bushes, shrubs, and private objects. Expected Tameka Allen Testimony.Plaintiff's Trial Exhibits 2-7.

6578. The proposed walking route does not give four feet of unfettered walking space without trespassing onto private properties, walking around obstacles on private properties or into the street.  Id.

6679. The proposed walking route forces pedestrians into the street and into dangerous traffic. Id.

**I.    The Current Transportation Arrangement With Five Star Express Transit Is Unsustainable And Only A Temporary Solution.**

67.   Tameka Allen will no longer be able to transport the minor Plaintiffs because she is moving to a new residence after January 1, 2017.  Expected Tameka Allen Testimony.

6880. Five Star Transit Express, a transit company that volunteered its services to Ms. Todd and her children, is unable to continue providing transportation services to the minor Plaintiffs because their vehicles spend too much time waiting. Hearing Testimony, p. 5, 20, 49-51.

81.   There are currently over one thousand bus stops in carpool lines and experiencing delays while picking up the children. walk zones.  Doc 31-1, P. Ex. 11-12; Hearing Testimony, p. 149.

82.   To create the bus stop that would provide accommodation for Ms. Todd would cost APS two hundred dollars per year.  Hearing Testimony, p. 148.

83.   The bus stop that would provide accommodation for Ms. Todd would require only minimal deviation of a current bus route.  Hearing Testimony, p. 151.

84.   Since 2014, APS has only received two requests for bus stops in walk zones from non-disabled parents.  Id.

## CONCLUSIONS OF LAW

Plaintiffs retain the structure of their earlier conclusions of law by separately discussing Ms. Todd and her children's claims.  The only significant difference in

their claims is the basis for the entitlement to education.  Ms. Todd cites the compulsory education statute as relating to her obligations and right to obtain a public education for the children.  No one has disputed the children's right to obtain a free public education. The essential issue is whether the children are entitled to an accommodation because they are unable to get to school due to their association with their mother, who, because of her disability, is unable to meet her responsibilities in ensuring the children safely get to school.

## A.    Ms. Todd's ADA Claim

1.    Ms. Todd is entitled, under the ADA, to the relief requested in her Complaint because she has proven by a preponderance of the evidence the requisite elements of her claim, namely: (1) she is disabled, as those terms are defined in the relevant statutes, (2) she is qualified to participate in or receive the benefits, services, or activities of Atlanta Public Schools, and (3) she was excluded from participation in, denied the benefits, services, or activities of, or otherwise discriminated against by Atlanta Public Schools, by reason of her disability. Waddell v. Valley Forge Dental Assocs., 276 F.3d 1275, 1279 (11th Cir. 2001)

(citing <u>Cash v. Smith</u>, 231 F.3d 1301, 1305 (11th Cir. 2000)).  *See also* 42 U.S.C. § 12132.[1]

## 1.   The ADA Has a Broad Remedial Purpose to Eliminate Discrimination

The purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).   The Justice Department's ADA regulations list an expansive set of prohibited discriminatory actions and conclude with the catch-all "Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service." 28 C.F.R. § 35.130(b)(1).   The Supreme Court noted that Congress had a "comprehensive view of the concept of discrimination advanced in the ADA." Olmstead, 527 U.S. at 598.  As the Eleventh Circuit has stated:

> "the language of Title II's antidiscrimination provision does not limit the ADA's coverage to conduct that occurs in the "programs, services, or activities  of [a public entity]. Rather, it is a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context,…."

---

[1] Defendant is a "program or activity receiving federal financial assistance" as defined by 29 U.S.C. § 794(a)-(b) of the Rehabilitation Act—a fact which was stipulated to in Defendants' Answer—this Court will focus on Plaintiffs ADA claims, and for all ADA claims which Defendants are held liable, the liability will similarly be found for Plaintiffs Rehabilitation Act claims. The Rehabilitation Act and the Americans with Disabilities Act are functionally identical except for the designation of the "program or activity". <u>McCullum v. Orlando Reg'l Healthcare Sys.</u>, 768 F.3d 1135, 1143 (11th Cir. 2014).

Bledsoe v. Palm Beach County Soil & Water Conservation Dist., 133 F.3d 816, 822 (11th Cir. Fla. 1998) quoting Innovative Health Systems, Inc. v. City of White Plains, 117 F.3d 37, 44-45 (2d Cir.1997).  The comprehensive mandate to end discrimination in all contexts provides the background for determining whether Plaintiffs have shown a failure to accommodate because of disability.

### 2.     Ms. Todd is Disabled and the Children are Associated with Her

Ms. Todd is disabled, as that term is defined in the Americans with Disabilities Act, 42 U.S.C. § 12102, because her complete blindness is a physical impairment that substantially limits one or more major life activities.  Agency Depo, pg. 83.

b. Ms. Todd, as a parent of children enrolled in Defendants' schools, is qualified to receive the benefits of Defendants' services, programs, and activities, namely the benefit of a public education for her children and a school-sponsored means of transportation. Because Ms. Todd's disability is relevant to her children's travel to school, that disability must be accommodated.  It is unlawful discrimination for a public entity to fail to accommodate disabilities where accommodation is necessary so that individuals can take advantage of the benefits of the public program. Henrietta D. v. Bloomberg, 331 F.3d 261, 274-275 (2d Cir.

N.Y. 2003); Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1283 (7th Cir. 1996).

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 28 U.S.C. § 12131.

Ms. ~~Todd meets the "essential eligibility requirements" to receive the benefit of a public education for her children and a school-sponsored means of transportation from Defendants. Ms.~~ Todd is a parent with children enrolled in Defendants' schools, and she is obligated by Georgia's Compulsory Education Law to get her children to school. ~~Under the Georgia Compulsory Education Law, parents are responsible to get their children to school. O.C.G.A.~~ O.C.G.A. § 20-2-690.1; Harleston Depo, pg. 60; 66. ("[Parents] are obligated to ensure that their child is going to school every day [under GA's compulsory education law].") Ms. Todd is required by state law to "enroll and send" her children to school. O.C.G.A. § 20-2-690.1(b). She can meet that requirement by sending the children to public school. Id. She is subject to criminal prosecution if she does not.

O.C.G.A. § 20-2-690.1(c). Indeed, APS has sent her truancy letters threatening her with prosecution. Harleston Depo, p. 56-58; 61-62.

The benefit of the compulsory education statute is not only for Ms. Todd's children, but also for Ms. Todd herself. Because the statute creates a criminal penalty for failure of a parent to comply with her duty to enroll children in school, Ms. Todd realizes the benefit of compliance with that statute by not incurring any penalties. In contrast, neither statutory duty nor the penalty is applicable to the children. Ms. Todd seeks reasonable accommodation to comply with the duty created by this statute.

### 3.     Ms. Todd has a Role in Ensuring her Children's Safety in Getting to School.

Small children, like Ms. Todd's, are not expected to walk to school by themselves. APS expects Ms. Todd to be responsible for the safety and protection of her children as they walk to school. Ms. Todd has made APS aware that she can not accompany the children to school; she cannot watch them walk towards school or ensure their safe passage from home to school. APS relies exclusively on the parent to assume this transport responsibility. Thus, APS must accommodate those parents with disabilities that prevent them from fulfilling this role.

The minor Plaintiffs have no other means to access school because they are too young to walk without adult supervision pursuant to Georgia Department of

Human Services, Lack of Supervision Guidelines and APS transportation policies. Hearing Testimony, p. 139-143.

The ADA's reasonable accommodation mandate prohibits public entities from administering APS's Regulation ED-R(1), which creates the "walk-zone", without allowing for a case by case consideration of requests for accommodation like the one sought by Plaintiffs.

c. APS's denial of Plaintiffs' request for accommodation excluded Plaintiffs from participation in the educational program provided by the public entity. APS admits that Ms. Todd's blindness prevents her from walking her children to school. Harleston Depo, pg. 44.

### 4.      APS Has Not Offered a Reasonable Accommodation

APS admits that they have not offered any other school sponsored support or service to address this circumstance. Agency depo, pgs. 36, 41, 63. To the extent that APS has suggested "alternatives," it has proposed a walking pool that did not contain any adult to accompany the children. It has also sent Plaintiffs' attorneys the names of two volunteers that it asserted were willing to drive the children. Upon further investigation, one volunteer is not reachable and the other is not willing to drive the children to school. Unaccompanied student walk pools and unwilling community volunteers do not constitute reasonable accommodations.

The ADA regulations make clear that accommodations should create equality as far as possible.

A public entity, in providing any aid, benefit or service, may not . . .

(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

28 CFR § 35.130 § 35.130(b)(1)(ii) and (iii).  The evidence concerning the effectiveness of volunteer services demonstrates that a system based on volunteers cannot create the same reliability as school provided transportation.[2]  Volunteers have been late and had to discontinue their service with relatively little notice leaving the children unable to get to school.  APS has misunderstood what volunteers proposed and failed to provide accurate information to Ms. Todd. Attempting to coordinate volunteers has required a significant amount of effort from Ms. Todd, her lawyers, and school personnel.  By contrast, school bus transportation is simple, certain and takes little time to coordinate.

---

[2] While volunteers are not an ideal solution, Ms. Todd is enormously grateful to the volunteers who have made it possible for her children to attend school.  Their remarkably generous help is deeply appreciated.

## 5.    The Failure to Offer Accommodation has Denied Ms. Todd's Children Access to Public Education Because of Her Disability.

APS admits that their decision not to provide any accommodations to Plaintiffs caused the exclusion from the benefits of the program.  Harleston depo, pgs. 60-68. Thus, APS has "otherwise discriminated" against Ms. Todd by reason of her disability in violation of Title II of the ADA.

2. Moreover, Ms. Todd is not required to show that her children are treated differently than children of non-disabled parents to maintain a failure to accommodate claim.  ADA and Rehabilitation Act "cases speak simply in terms of helping individuals with disabilities access public benefits to which both they and those without disabilities are legally entitled, and to which they would have difficulty obtaining access due to disabilities; the cases do not invite comparisons to the results obtained by individuals without disabilities." Henrietta D. v. Bloomberg, 331 F.3d at 274. This approach follows the direction of Olmstead v. L. C. by Zimring, 527 U.S. 581(1999) which rejected the suggestion that every ADA claim must necessarily include proof of disparate impact:

> Nor were [the plaintiffs] subjected to discrimination, the State contends, because discrimination necessarily requires uneven treatment of similarly situated individuals, and [plaintiffs] had identified no comparison class, i.e., no similarly situated individuals given preferential treatment. We are satisfied that Congress had a more comprehensive view of the concept of discrimination advanced in the ADA.

Olmstead, 527 U.S. at 598 (plurality op.) (internal quotations and citation omitted). The focus of an ADA claim is whether plaintiffs need accommodation in order to access a benefit offered by a public entity.

APS further denied Plaintiffs benefits, services, or activities of, or otherwise discriminated against Plaintiffs by failing to consider Plaintiff Todd's disability when determining the route was safe. APS regularly considers the safety of children walking to school in determining whether to put a bus stop in a walk zone. APS has hundreds of bus stops in walk zones based on safety concerns.

Ms. Todd requested a bus stop in a walk zone as an accommodation of her disability. She sought this because she determined it was not safe for the children to walk to school alone. APS refused to consider the mother's disability in determining the safety of the children in walking to school. In this case, Ms. Todd's disabilities prevent her from walking with her children and otherwise assuring her children's safe transportation to school. She is entitled to have her disability considered in determining whether accommodation is reasonable.

In this case, because the mother's disability affects the safety of the children walking to school, an accommodation is required. Accommodation is an individual process and here APS has refused to consider the individual situation of

29

the children as affected by the mother's disability.  Ms. Todd's disabilities must be accommodated if that is necessary to provide the benefit to the children.

**B.    Minor Plaintiffs ADA Claims**

1.    As noted above, the minor Plaintiff's right to accommodation is, with only slight differences, based on the same facts and analysis applicable to Ms. Todd.

The minor Plaintiffs are entitled, under the ADA, to the relief requested in their Complaint because they has proven by a preponderance of the evidence the requisite elements of their claim, namely: (1) they are individuals who the Defendants know to be associated with or related to a disabled person; (2) they are otherwise qualified to receive the benefits or services of a public entity; and (3) they were "personally excluded, personally denied benefits, or personally discriminated against because of their association with a disabled person." McCullum v. Orlando Reg'l Healthcare Sys., 768 F.3d 1135, 1143 (11th Cir. 2014).

a.    The minor plaintiffs are individuals who the Defendants know to be associated with or related to a disabled person. b. The    minor    Plaintiffs    are qualified to receive Defendants' benefits or services in question, namely the benefit of a free public education. O.C.G.A. § 20-2-133; Ga. Const. Art. VIII, Sect. I. c. The minor Plaintiffs are being excluded from the public education program

because of their relationship to their disabled mother.   The children cannot otherwise get to school.  They have missed ten weeks of school because APS has denied their disabled mother's request for accommodation.  The minor Plaintiffs have no other means to access school because they are too young to walk without adult supervision pursuant to state law and regulation.  Georgia Department of Human Services, Lack of Supervision Guidelines, (Children under eight years old should never be left alone).

2.    Ms. Todd's requested accommodation will not pose an undue financial or administrative burden.  The cost to change the bus route is minimal.  Bus routes exist in walk zones throughout the District.  There is no significant difference in distance or time between the existing route and the proposed route.  There are no administrative concerns that exist to providing the requested accommodation.

To show discrimination, the Plaintiff children must show that they are associated with a disabled person and it is because of that association that they have been discriminated against.  In this case the discrimination alleged is simply a failure to accommodate the children's needs due to their association with their disabled mother.  As shown above, APS recognizes Ms. Todd's role in ensuring safe transportation for the children, yet refuses to accommodate her blindness which makes her unable to perform that role for her children.

**C.      Claim for APS Discriminatory Administration of a Policy**

1.      The ADA requires a public entity to make reasonable modifications in policies...when the modifications are necessary to avoid discrimination on the basis of disability.  28 C.F.R. § 35.130 (b)(7).

2.      APS Policy ED-R(1) creates a walk-zone for families that live less than one mile from the school and deems such students "not eligible for transportation." Agency Depo, Ex. 1. Defendants will not entertain requests for accommodations from disabled parents living in the walk zone.  Defendants admit that they make no reasonable accommodations for those that cannot walk and who also reside in the "walk- zone." and cannot walk.  Defendants' administration of the walk-zone policy and the failure to even consider requests for accommodations violates the ADA's affirmative mandate to make affirmative modifications to "avoid discrimination on the basis of disability." Ability Ctr. of Greater Toledo v. City of Sandusky, 385 F.3d 901, 910 (6th Cir. 2004) (stating that the "failure to provide plaintiffs certain . . . accommodations is actionable under Title II even when not intentional) (citing Alexander v. Choate, 469 U.S. 287 (1985).

3.      Defendants implement a Defendants' policy and practice allows exceptions within "walk-zone" exception policy for families livingzones" by creating school bus stops on routes deemed "unsafe."  However, Defendants do not consider the

safety of the route under consideration in *terms of the person seeking to access the route*.  APS Director of Transportation did not even consider whether the route from Plaintiff's home to Continental Colony was safe for a person without sight to navigate. —Agency Depo, pg. 45.  They also did not consider that not only does Plaintiff- Todd's disability makes it impossible for her to walk with the children, as well as do the other things sighted parents might do to protect their children who are walking.   Ms. Todd cannot scan the street for danger before the children leave. She can not watch them walk down the block or respond to an emergency situation that arises.  She can not transport them on days when weather or other conditions are unusually bad.

Administration of the walk-zone exception policy without consideration for the disability of the person living on the walk route violates the ADA's mandate to make affirmative modifications to "avoid discrimination on the basis of disability." Disabled in Action v. Bd. of Elections in City of N.Y., 752 F.3d 189, 200-01 (2d2nd Cir. 2014); Toledo v. Sanchez, 454 F.3d 24, 32 (1st Cir. 2006); Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454-55 (5th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 488 (4th Cir. 2005).

**D**.    **No Undue Burden or Administrative Difficulty**

1.     Plaintiffs' request for accommodation is reasonable as it does not impose any undue financial or administrative burdens on APS and there is no fundamental alteration of the program. Schwarz v. City of Treasure Island, 544 F.3d 1201, 1220 (11th Cir. 2008) *citing* Sch. Bd. of Nassau Cty. v. Arline, 480 U.S. 273, 288 n.17 (1987).  See e.g. Radaszewski ex rel Radaszewski v. Maram, 383 F.3d 599 (7th Cir. Ill. 2004); Grooms v. Maram, 563 F. Supp. 2d 840, 857 (N.D. Ill. 2008).

2.     Defendants admit that moving bus route 1505 so that it will pass by the minor plaintiffs household to pick them up each morning and drop them off in the afternoon will cost approximately $200 per year.  Agency depo, pg. 67-68.

3.     Ms. Todd's requested accommodation will not pose an undue financial or administrative burden.  Bus routes exist in walk zones throughout the District. There is no significant difference in distance or time between the existing route and the proposed route.

Defendants further admit that the cost of accommodating Ms. Todd and her family is not an undue burden; rather evaluating a, but that the evaluation process for obtaining transportation services would be anthe undue hardship for APS.  Id. However, in  the past two years the executive director of transportation has received two requests to modify bus routes for parents who are disabled.  Id.

4. ~~Defendants admit that in two years the executive director of transportation has received only two requests to modify bus routes for parents who are disabled. Id.~~

5. ~~The ADA requires an individualized determination of the accommodation needed by the covered individuals. Title II, ADA.~~

6. Defendants admitted they are able to accommodate the Plaintiffs in the same manner in which they have created hundreds of other bus stops in walk-zones across the school district with no undue burden. Their fear that this accommodation will lead to a proliferation of frivolous accommodation requests is not supported by record facts. The ~~refusal~~failure to even consider accommodation requests is a further violation of the ADA.

Respectfully submitted this 13th day of January, 2017[3].

/s/Kimberly D. Charles
Kimberly D. Charles
Georgia Bar No. 141770
**Atlanta Legal Aid Society, Inc.**
777 Cleveland Avenue SW, Suite 410
Atlanta, GA 30315
(678) 702-8404
(404) 669-0944 (fax)
kdcharles@atlantalegalaid.org

/s/William C. Thompson
William C. Thompson
Georgia Bar No. 710150
**Atlanta Legal Aid Society**
777 Cleveland Avenue SW, Suite 410
Atlanta, GA 30315
(678) 702-8406
(404) 669-0944 (fax)
wcthompson@atlantalegalaid.org

---

[3] Counsel certifies that the foregoing document has been prepared in Times New Roman 14 point font as per Local Rule 5.1(c).

/s/Craig L. Goodmark
Craig L. Goodmark
Georgia Bar No. 301428
**Atlanta Legal Aid Society, Inc.**
54 Ellis Street, NW
Atlanta, GA 30303
(404) 719-4848
cgoodmark@gmail.com

/s/Jonathan D. Flack
Jonathan D. Flack
Georgia Bar No. 111906
**Atlanta Legal Aid Society, Inc.**
777 Cleveland Avenue SW, Suite 410
Atlanta, GA 30315
(678) 702-8405
(404) 669-0944 (fax)
jflack@atlantalegalaid.org

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DAFFANIE TODD on behalf of | ) | |
| herself; R.D., R.D., and D.T., | ) | |
| by and through their next friend, | ) | |
| DAFFANIE TODD, | ) | CIVIL ACTION |
| Plaintiffs, | ) | FILE NO:  1:16-CV-3729-WSD |
| | ) | |
| vs. | ) | |
| | ) | |
| MERIA CARSTARPHEN, | ) | |
| in her official capacity as | ) | |
| SUPERINTENDENT, | ) | |
| ATLANTA INDEPENDENT | ) | |
| SCHOOL SYSTEM and ATLANTA | ) | |
| INDEPENDENT SCHOOL | ) | |
| SYSTEM, | ) | |
| Defendants. | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing

*Plaintiffs' Proposed Findings Of Fact And Conclusions Of Law* on counsel for

AISS thru filing this document with the E/CF Filing System.

Dated this 13th day of January 2017.

<u>/s/Kimberly D. Charles</u>
Kimberly D. Charles
Georgia Bar No. 141770
**Atlanta Legal Aid Society, Inc.**
777 Cleveland Avenue SW, Ste. 410
Atlanta, GA 30315
(678) 702-8404
kdcharles@atlantalegalaid.org

<u>/s/William C. Thompson</u>
William C. Thompson
Georgia Bar No. 710150
**Atlanta Legal Aid Society**
777 Cleveland Avenue SW, Suite 410
Atlanta, GA 30315
(678) 702-8406
wcthompson@atlantalegalaid.org